# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY STARKS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 08 C 4901 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr., |
| | ) | |
| DR. ANN M. DUNLAP, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jeffrey Starks has sued Drs. Ann Dunlap, Eileen Couture, Andrew Ting, Sergio Rodriguez and Avery Hart alleging violations of federal law occurring during Plaintiff's pre-trial detention at Cook County Jail ("CCJ") in Chicago. Plaintiff's claims are brought pursuant to 42 U.S.C. §1983. Specifically, Plaintiff argues that, during his time at CCJ, jail officials denied him access to surgery to reverse a temporary colostomy, which he had obtained prior to his incarceration. Defendants have moved for summary judgment [84]. For the reasons set forth below, the Court grants Defendants' motion [84] and dismisses Plaintiff's claims without prejudice.

### I.     Factual Background

On September 21, 2006, Plaintiff was shot in the pelvic region. Defs.' SOF ¶ 1. As a result of this incident, Plaintiff was taken to Trinity Hospital and then to Christ Hospital, where he underwent surgery on his injury and was given a colostomy. *Id.* at ¶¶ 2-3. The surgery was performed by Dr. James Doherty ("Dr. Doherty"), and the purpose of the colostomy was to temporarily divert Plaintiff's fecal waste away from a rectal injury that he had sustained, thus

allowing the rectal injury to heal. Pl.'s SOF ¶¶ 9-10. Following his surgery, his doctor and nurses instructed Plaintiff on how to care for his colostomy and colostomy bag. Defs.' SOF ¶ 4.

On January 22, 2007, Plaintiff entered Cook County Jail ("CCJ") as a pretrial detainee. Defs.' SOF ¶ 5. While at CCJ, Plaintiff was housed primarily in Divisions 10 and 11. *Id.* at ¶ 7. There, Plaintiff was provided with colostomy bags when they were needed, and Plaintiff did not need any additional supplies to care for his colostomy. *Id.* at ¶ 9. Plaintiff attests that prior to being arrested and detained, he was scheduled to have his colostomy reversed, on January 24, 2007, but he was unable to proceed with the surgery because of his arrest. Pl.'s SOF ¶ 8. Defendants contest this assertion, stating there is no factual support in the record to support these claims. Defs.' Resp. to Pl.'s SOF ¶ 8.

Dr. Ann Dunlap first encountered Plaintiff on May 21, 2008, when she examined him and then referred him for colostomy reversal surgery. Defs.' SOF ¶ 11. This examination and referral occurred 14 months after Plaintiff had first arrived at CCJ. Pl.'s SOF ¶ 14. During this examination, Dr. Dunlap also examined Plaintiff's colostomy and found the area clean and with no complications. Defs.' SOF ¶ 13. Plaintiff states in his affidavit that he told his doctors about pain and clogging while at CCJ. Pl.'s Resp. to Defs.' SOF, citing Ex. 1 to Pl.'s SOF (Pl.'s affidavit at ¶¶ 5-9). Plaintiff's affidavit does not specify when he informed his doctor of the pain he experienced, but he maintains that his colostomy caused him to experience significant pain and discomfort. Pl.'s Resp. to Defs.' SOF ¶ 12. Plaintiff attests that the colostomy often became "clogged" and his waste seemed to back up in his large intestine. This problem resulted in pressure in Plaintiff's abdomen that radiated up to his head. Plaintiff attests that he was sometimes forced to stick one of his fingers into his protruding large intestine and physically dig out whatever waste blockage was there to relieve the pressure. In addition, Plaintiff attests that

2

his colostomy bag was extremely uncomfortable, causing him to experience trouble sleeping, and that he was bothered by the unpleasant smell. Pl.'s SOF ¶¶ 2-6. Defendants emphasize, accurately, that Plaintiff has offered no medical evidence prior to October 2008 to support these alleged facts. Defs.' Resp. to Pl.'s SOF ¶¶ 2-6.

On Dr. Dunlap's referral, Plaintiff came to the Department of Colorectal Surgery at Stroger on June 15, 2008 to be evaluated for a colostomy reversal. During that visit, the department ordered a colonoscopy and barium enema, tests that typically are needed before a colostomy reversal. *Id.* at ¶¶ 35-36. Dr. Dunlap subsequently saw Plaintiff on July 23, 2008, during which time she saw no evidence that Plaintiff's colostomy was clogged. She further testified that Plaintiff did not complain of pain. Defs.' SOF ¶¶ 14-15. Plaintiff agrees that there was no evidence of clogging, but, again citing his affidavit, rather than his deposition, he attests that he did experience pain, of which he claims he informed Dr. Dunlap (though he does not specify when).[1] Pl.'s Resp. to Defs.' SOF, citing Pl.'s Ex. 1, Plaintiff's affidavit, ¶¶ 5-9. The record is clear that, despite Plaintiff's testimony during litigation that, at times, he felt a great deal of pain related to his colostomy, Plaintiff did not file a grievance about pain or treatment related to his colostomy until the summer of 2008.

At the time of Plaintiff's incarceration, CCJ had an established grievance procedure available to detainees. The parties agree that Plaintiff had used this procedure in the past. *Id.* at ¶¶ 26-27. During his time at CCJ, Plaintiff filled out three grievance forms about colostomy-related issues—on July 11, July 13, and July 23, 2008. *Id.* at ¶¶ 29-33. Plaintiff's July 13, 2008 grievance states "I now believe my colon is infected. I constantly bleed on daily bases [sic] and

---

[1] Plaintiff's affidavit, created after his deposition, introduces additional facts and characterizes his deposition testimony in a different way. See *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006) (noting that "self-serving affidavits without factual support in the record will not defeat a motion for summary judgment").

3

I'm dealing with extreme pain and it's frustratin [sic]." Pl.'s Resp. to Defs.' SOF, citing Defs.' Ex. 8. Plaintiff's July 13, 2008 and July 23, 2008 grievances were given to Plaintiff's "CRW" (social worker) on August 19, 2008, and were assigned control number 08 X 1509. Defs.' SOF ¶ 35. Plaintiff was provided with a shared response to 08 X 1509 on August 22, 2008. *Id.* at ¶ 36. Plaintiff subsequently appealed the response on September 1, 2008. *Id.* at ¶ 37. However, on August 27, 2008, prior to appealing the Department of Corrections' August 22, 2008 decision, Plaintiff commenced this suit by filing a *pro se* complaint. *Id.* at ¶ 40. After consideration of Plaintiff's motion for appointment of counsel [4], Plaintiff was provided with counsel on September 9, 2008.[2]

On October 7, 2008, after the lawsuit in this case commenced, medical staff at the jail noted that Plaintiff suffered from "chronic tape trauma with mixed infection." Defs.' SOF ¶ 16. This incident of chronic tape trauma is the only pain or problem associated with Plaintiff's colostomy found on Plaintiff's medical records. *Id.* at ¶ 17. According to Defendants, chronic tape trauma is a minor, non-painful condition caused by hygiene problems. *Id.* at ¶ 18. While Plaintiff agrees that chronic tape trauma is a minor condition associated with inadequate hygiene, he denies that it was not painful, again citing paragraphs 5-9 of his affidavit, in which he describes the general pain he experienced while using a colostomy bag. Pl.'s Ex. 1, Plaintiff's affidavit, ¶¶ 5-9. In order to combat the chronic tape trauma, Plaintiff was prescribed doxycycline, clinamycin and clotrimazone and again instructed on proper wound care. Defs.' SOF ¶¶ 21-22.

On December 21, 2008 Dr. Cintron received a call from the chair of the Department of Surgery, Dr. Richard Kean, who told him to operate on Plaintiff. The surgery occurred two days

---

[2] On December 11, 2008, Plaintiff's counsel filed the Amended Complaint [18] against Dr. Dunlap.

4

later on December 23, 2008. *Id.* at ¶¶ 40-41. Colostomy reversals are generally routine, elective surgeries, and the parties agree that Plaintiff's reversal was elective. Defs.' SOF ¶ 25.

On June 30, 2009, Plaintiff filed the Second Amended Complaint [45] against all of the Defendants. In response, on December 20, 2010, Defendants filed the instant motion for summary judgment [84].

**II.     Standard of Review**

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Factual disputes that are irrelevant to the outcome of the suit "will not be counted." *Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003) (quotation marks and citations omitted). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. The

non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

## III. Analysis

Defendants contend that Plaintiff failed to exhaust his administrative remedies in regard to his claim that Defendants denied him access to surgery to reverse his colostomy. Specifically, Defendants maintain that they are entitled to summary judgment because Plaintiff filed the instant suit before he appealed the CCJ's denial of his grievance, control number 08 X 1509. In contrast, Plaintiff claims that the PLRA exhaustion requirement has been met because he received his colostomy reversal surgery and there are no more administrative remedies available to Plaintiff. However, Plaintiff acknowledges that he appealed his grievance "while this litigation was pending (and before he received his reversal)." Pl.'s Resp. at 3.

Defendants contend, among other things, that they are entitled to judgment as a matter of law under the Prisoner Litigation Reform Act ("PLRA") because Plaintiff failed to exhaust his administrative remedies before filing this lawsuit. Pursuant to the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; see also *Pozo v. McCaughtney*, 286 F.3d 1022, 1023-24 (7th Cir. 2002) ("Unless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred."). In *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008), the

Seventh Circuit addressed "whether a prisoner plaintiff in a suit for damages governed by the Prison Litigation Reform Act is entitled by the Seventh Amendment to a jury trial on any debatable factual issues relating to the defense of failure to exhaust administrative remedies." The court answered that question in the negative, holding that the district judge must determine as a threshold matter, before proceeding to disposition on the merits (and, in most cases, even discovery), whether "the prisoner has properly exhausted his administrative remedies." *Id.* at 741-42; see also *Hamilton v. Allen*, 2009 WL 395470, at *2 (N.D. Ill. Feb. 18, 2009) ("The issue of exhaustion of available administrative remedies is a threshold inquiry for the court").[3]

The purpose of the exhaustion requirement is to afford "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); see also *Jones v. Bock*, 549 U.S. 199, 219 (2007) (noting that exhaustion allows "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record"); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("The sole objective of § 1997e(a) is to permit the prison's administrative process to run its course before litigation begins"). Because failure to exhaust is an affirmative defense, the burden of proof lies with the prison officials, not with the plaintiff.[4] *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005).

The Seventh Circuit "has taken a strict compliance approach to exhaustion. A prisoner must properly use the prison's grievance process. If he or she fails to do so, the prison

---

[3] "Defendants may waive or forfeit reliance on § 1997e(a), just as they may waive or forfeit the benefit of a statute of limitations." *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532 (7th Cir. 1999). However, when defendants assert their rights—as Defendants did in this case by moving for summary judgment on the exhaustion issue—then "the judge must address the subject immediately." *Id.*

[4] Defendants' answer, filed in response to Plaintiff's second amended complaint, asserts the affirmative defense of exhaustion.

administrative authority can refuse to hear the case and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. Accordingly, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Moreover, there is no futility exception to PLRA's exhaustion requirement. See *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532 (7th Cir. 1999); *Massey v. Helman*, 196 F.3d 727 (7th Cir. 2000). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim. The potential effectiveness of an administrative response bears no relationship to the statutory requirement that prisoners first attempt to obtain relief through administrative procedures." *Massey*, 196 F.3d at 733. In short, "[e]xhaustion is required even if the prisoner believes his efforts in securing relief will be futile or if the administrative authority has no power to grant the requested relief." *Obriecht v. Raemisch*, 517 F.3d 489, 492 (7th Cir. 2008) (citations omitted).

The PLRA obliges a prisoner who wishes to complain about prison conditions to forestall the filing of a lawsuit "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added); see also *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) (failure to follow state rules about the time and content of grievances "means failure to use (and thus to exhaust) available remedies") (emphasis added). While the case law on what constitutes "availability" is not well developed, it is clear that a plaintiff's claims will not be dismissed if "prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809-10; see also *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002).

In the instant case, the parties agree that on July 11, July 13, and July 23, 2008, Plaintiff filed grievances related to his colostomy and his request to have it reversed. Plaintiff's July 13, 2008 and July 23, 2008 grievances were given to Plaintiff's "CRW" (social worker) on August 19, 2008, and were assigned control number 08 X 1509. Defs.' SOF ¶ 35. Plaintiff was provided with a shared response to 08 X 1509 on August 22, 2008. *Id.* at ¶ 36. Before Plaintiff appealed the August 22, 2008 decision, he commenced this suit by filing a *pro se* complaint. Plaintiff then appealed the initial grievance determination after filing suit in federal court.

The record clearly demonstrates that Plaintiff filed the instant suit before he appealed the CCJ's denial of his grievance. Defendants stress, as the case law does, that the PLRA requires that "no action shall be *brought* with respect to prison conditions under 42 U.S.C. § 1983 * * * until such administrative remedies as available are exhausted." (Emphasis added); see also *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 534-35 (7th Cir. 1999). As noted by the Seventh Circuit in *Perez*, "Section 1997e(a) does not say that exhaustion of administrative remedies is required before a case may be decided. It says, rather, that *'[n]o action shall be brought* with respect to prison conditions * * * until* such administrative remedies as are available are exhausted.'" *Id.* at 535 (emphasis in original). "Congress could have written a statute making exhaustion a precondition to judgment, but it did not. The actual statute makes exhaustion a precondition to *suit*." *Id.* (emphasis in original) (noting that "court must not proceed to render a substantive decision until it has first considered § 1997e(a)").

The exhaustion requirement of the PLRA has been interpreted strictly, to require inmates to take advantage of the full scope of grievance procedures made available before commencing legal action. In *Booth v. Churner,* 532 U.S. 731 (2001), the Supreme Court provided that as long as the administrative authority can take some action in response to the grievance, even if that

action is not what was requested by the inmate, then the exhaustion requirement has not been met. *Id.* at 741. Additionally, "[e]ven when the prisoner seeks relief not available in grievance proceedings, notably monetary damages, exhaustion is a prerequisite to suit." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). In this case, Plaintiff chose to file suit before appealing the denial of his grievance. Because Plaintiff had not undergone surgery at the time that he filed suit, Defendants are correct in asserting that the exact relief Plaintiff sought remained available through the CCJ grievance process, and thus the exhaustion requirement was not met.

Plaintiff claims that the PLRA exhaustion requirement has been met because the colostomy reversal surgery has taken place and thus exhaustion would be futile (as there are no more administrative remedies available to Plaintiff). To support his argument, Plaintiff relies on *Thornton v. Snyder*, 428 F.3d 690 (7th Cir. 2005). In *Thornton*, an inmate brought a § 1983 action against prison officials, claiming his intolerable cell conditions constituted cruel and unusual punishment in violation of the Eight Amendment. The court found that the plaintiff had met the exhaustion requirement. Although the plaintiff did not appeal the denial of his grievance before filing suit, because the cell conditions had been improved before suit was filed, he had already received the requested relief, so appeal was unnecessary. *Id* at 692. But in *Thornton,* because the cell conditions had been improved, there were no available remedies remaining at the time the plaintiff filed suit. In contrast, here, Plaintiff had not received his colostomy reversal surgery at the time that he filed suit, and thus there were available remedies that could be requested through the administrative appeals process. See also *Ford v. Johnson*, 362 F.3d 395, 398-400 (7th Cir. 2004) (noting that administrative remedies have not been exhausted unless the inmate has given the process a chance to work and followed through with

administrative appeals). Consequently, Plaintiff's case must be dismissed for failure to exhaust his administrative remedies.

Notwithstanding that result, it appears that, with the considerable assistance of appointed *pro bono* counsel, Plaintiff has obtained a significant measure of the relief that he requested at the time that he commenced this litigation. Plaintiff's counsel entered an appearance in the case shortly after Plaintiff filed his complaint and worked diligently to achieve – less than four months into the pendency of this lawsuit and just five months after Plaintiff filed his first grievance with the Department of Corrections – the colostomy reversal that Plaintiff sought. In fact, Defendant Dunlap recommended Plaintiff for elective colostomy reversal surgery the first time she examined him and subsequently followed up on this recommendation to ensure that Plaintiff underwent colostomy reversal.[5] Thus, the total time that elapsed between the first time that Defendant Dunlap examined and referred Plaintiff for colostomy reversal surgery in May 2008 and the surgery in December 2008 was seven months.[6] That is substantially less time than the average year-long period most patients wait for colostomy reversal surgery at Stroger Hospital.[7] Def. Ex. 4, Deposition of Dr. Jose Cintron, p. 44, lines 11-23. Furthermore, Plaintiff was referred for the surgery prior to filing any grievances. Thus, while Plaintiff's failure to

---

[5] Following Plaintiff's June 23, 2008 examination by Defendant Dunlap, Defendant checked with Stroger Hospital to ensure that Plaintiff was on the schedule, and found that Plaintiff had been seen by Stroger's colorectal department several times in preparation for the procedure. Def. Ex. 2, p. 53, lines 21-24, p. 54, lines 1-3, 7-12.

[6] Plaintiff has never been treated by the remaining Defendants in this case—Drs. Rodriguez, Ting, Couture, and Hart were sued because they served successively as Cermak's medical directors.

[7] Dr. Cintron, Stroger Hospital's Rule 30(b)(6) witness, testified that there is "a list of individuals that need operative procedures" and the list consists of "almost all elective operative procedures, and they're either benign anorectal cases," or, as with Plaintiff, "stoma closures." *Id.* at ¶ 22-23. The waiting list is for the entire Department, not just Cermak patients, and no one at Cermak has the ability to prioritize the Department's list.

exhaust bars him from receiving monetary damages, the suit does not appear to have been brought for naught.

**IV.  Conclusion**

For the forgoing reasons, the Court grants Defendants' motion for summary judgment [84].  Judgment is entered in favor of Defendants and against Plaintiff Starks.

Dated:  August 23, 2011

_____
Robert M. Dow, Jr.
United States District Judge